# No. _____

## IN THE

# United States Court of Appeals

## FOR THE FIFTH CIRCUIT

_____

## IN RE SHERMAN LAMONT FIELDS,

*Movant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS, WACO DIVISION (W-09-CV-009, W-01-CR-164)

# APPLICATION FOR LEAVE TO FILE A SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255

## THIS IS A CAPITAL CASE

| | |
|---|---|
| JEFFREY ELLIS | PETER J. ISAJIW |
| OREGON CAPITAL RESOURCE CENTER | KING & SPALDING LLP |
| 621 SW Morrison St., Suite 1025 | 1185 Avenue of the Americas |
| Portland, OR  97205 | New York, NY  10036 |
| (206) 218-7076 | (212) 556-2100 |

*Attorneys for Defendant-Appellant*
*Sherman Lamont Fields*

Movant, Sherman Lamont Fields, through undersigned counsel, respectfully requests that this Court, pursuant to 28 U.S.C. § 2244(b)(3), authorize him to file a successive motion under 28 U.S.C. § 2255(h)(2).  Mr. Fields was convicted of using a firearm causing death during and in relation to escape, a "crime of violence," in violation of 18 U.S.C. § 924(c).  He was subsequently sentenced to death under § 924(j), *solely* pursuant to his § 924(c) conviction under this count.  But following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), escape cannot qualify as a "crime of violence" under § 924(c) and Mr. Fields' conviction cannot stand.  Mr. Fields makes this request so that he may immediately challenge his conviction and death sentence under *Johnson*.

In *Johnson*, the Supreme Court held that the residual clause in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), is unconstitutionally vague. This means that the nearly identical 18 U.S.C. § 924(c)(3)(B), which defines "crime of violence" for purposes of a § 924(c) offense, is also unconstitutionally vague.  In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court expressly held that *Johnson* applies retroactively to cases on collateral review, such as the instant case.  *Id.* at 1265.  In light of *Johnson* and *Welch*, Mr. Fields' § 924(c) conviction cannot stand.

Mr. Fields can make a *prima facie* showing of possible merits to warrant a review by the district court, as required by 28 U.S.C. § 2244(b)(3) and §

2255(h)(2). Further, Mr. Fields has timely filed this application and the attached §
2255 motion within one year after the Supreme Court issued its decision in
*Johnson* on June 26, 2015. Accordingly, this Court should allow the district court
an opportunity to consider the merits of his application.

## INTRODUCTION

On January 30, 2004 Mr. Fields was convicted of one count of using a
firearm causing death during and in relation to a "crime of violence" in violation of
18 U.S.C. § 924(c)(1). Specifically, the "crime of violence" underlying the §
924(c) charge was escape, 18 U.S.C. § 751(a). However, post-*Johnson,* as
explained in the attached Motion to Vacate Conviction Under 28 U.S.C. § 2255,
escape cannot qualify as a "crime of violence." *See* Exhibit 1. Therefore, Mr.
Fields is innocent of the § 924(c) offense, and his conviction and attendant death
sentence are void.[1]

The relevant portion of § 924(c) defining a "crime of violence" has two
alternate clauses. The first clause – § 924(c)(3)(A) – is commonly referred to as
the "force" clause or the "elements" clause. It applies to any felony that "has as an
element the use, attempted use, or threatened use of physical force against the
person or property of another." The other – § 924(c)(3)(B) – is commonly referred

---

[1] Mr. Fields' successor § 2255 petition also challenges his noncapital convictions and
sentences pursuant to § 924(c) in Count Five (using and carrying a firearm during and in
relation to carjacking) and Count Seven (using and carrying a firearm during and in relation
to escape) on constitutional grounds in light of *Johnson*.

to as the residual clause.  This catchall clause requires the court to look at whether the ordinary case of a felony would subject the victim to "a substantial risk [of] physical force" – regardless of the *particular* facts underlying that felony – and if so, categorizes that felony as a "crime of violence."

In *Johnson*, the Supreme Court struck down the Armed Career Criminal Act's (ACCA) residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague.  135 S. Ct. at 2557.  Under *Johnson*, § 924(c)'s materially indistinguishable residual clause, § 924(c)(3)(B), must also be stricken as unconstitutional.

This Court has recently struck down a materially identical residual clause – 18 U.S.C. § 16(b) – as unconstitutionally vague in light of *Johnson*.  *See United States v. Gonzalez-Longoria*, 813 F.3d 225, 235 (5th Cir. 2016).  The Ninth Circuit in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015) and the Seventh Circuit in *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015) have also struck down such residual clauses on constitutional grounds.

The rationale of *Gonzalez-Longoria*, *Dimaya* and *Vivas-Ceja* must also apply when determining whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c).  Relying on the reasoning of *Dimaya* and *Vivas-Ceja*, two district courts recently found that the § 924(c) residual clause was void for vagueness.  *See United States v. Lattanaphom*, 2106 WL 393545 (E.D. Cal. 2016); *United States v. Edmundson*, 2015 WL 9582736 (D. Md. Dec. 30, 2015).  As

3

further detailed in the attached § 2255 motion, these cases compel the same conclusion here.

Mr. Fields' escape offense also cannot qualify as a "crime of violence" under § 924(c)'s force clause (§ 924(c)(3)(A)). Escape (1) does not have as an *element* the use, attempted use, or threatened use of violent physical force, and (2) can be accomplished without the *intentional* use, attempted use, or threatened use of the same. Therefore, escape cannot be categorized as a "crime of violence" under § 924(c), and Mr. Fields' conviction cannot be sustained.

Pointedly, during Mr. Fields' trial, the prosecution never claimed that Mr. Fields' escape was violent – nor could it. Mr. Fields was alleged to have offered money to a corrections officer, who in turn opened the back door to the correctional facility and let Mr. Fields out. There was no allegation of actual or threatened violence in connection with the escape. Instead, the prosecution argued that escape *in the abstract* may be a violent crime:

> One of the things that you have to remember about escape that the Judge told you . . . it's a crime of violence. Why is escape a crime of violence? Because bad things happen when desperate men are on the run from the law and have guns. They can intimidate people. They can kill people. They can rob people. They can shoot people. Bad things happen. That's why it's a violent offense.

Trial Tr. 1994 at 11-17. This is precisely the "judge-imagined abstraction" that *Johnson* held to be unconstitutional. *See* 135 S. Ct. at 2557.

4

As a result, Mr. Fields' § 924(c) conviction (1) violates due process, (2) violates the United States laws and results in a fundamental miscarriage of justice, and (3) was entered in excess of the district court's jurisdiction.

Mr. Fields urges this Court to authorize his application for a successive petition so that he can pursue the above-described *Johnson* claim in District Court. Because Mr. Fields has previously pursued a collateral attack on his conviction and sentence, he must first seek authorization from this Court to file a successive petition. 28 U.S.C. § 2244(b)(3). This Court may authorize the filing of a second or successive application when the petitioner makes a "*prima facie* showing" that his or her proposed claim relies on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

Because *Johnson* announced a new substantive rule of constitutional law that has been made retroactive by the Supreme Court, *see Welch*, 136 S. Ct. 1257, Mr. Fields can make a *prima facie* showing that he is entitled to pursue a successive § 2255 claim.

## PROCEDURAL HISTORY

### A. *Indictment, Trial, Guilty Verdict and Sentencing.*

On May 13, 2003, the Government filed an indictment in the United States District Court for the Western District of Texas, charging Mr. Fields with (1)

5

conspiring to escape from federal custody, (2) escaping from federal custody, (3) using and carrying a firearm causing death during and in relation to escape, (4) carjacking, (5) using and carrying a firearm during and in relation to carjacking, (6) being a felon in possession of a firearm, and (7) using and carrying a firearm during and in relation to escape. On May 23, 2003, the Government gave notice it would seek the death penalty.

Trial started in January 2004. On January 30, 2004, the jury convicted Mr. Fields on all counts. From February 2 to February 5, 2004, the same jury heard testimony and argument in the penalty phase. On February 5, the jury retired to deliberate. On February 6, the jury declared itself unable to agree on punishment, and was told to keep deliberating. It recommended death shortly thereafter.

The district court entered judgment on April 12, 2004, sentencing Mr. Fields to death. The death sentence was *solely* predicated on Mr. Fields' conviction for using a firearm causing death in connection with his escape under § 924(c).[2]

**B.    *Direct Appeal.***

Mr. Fields filed a notice of appeal the next day. The conviction and death sentence were affirmed by the Fifth Circuit Court of Appeals on March 29, 2007, with Benavides, J., dissenting. *See United States v. Fields*, 483 F.3d 313, 323 (5th

---

[2] The court also sentenced Mr. Fields to 715 months of imprisonment on the noncapital counts.

Cir. 2007). Mr. Fields sought *certiorari* in the United States Supreme Court, which denied review on January 14, 2008.

### C.    *Previous 2255 Petition.*

On January 14, 2009, Mr. Fields filed a motion for a new trial and to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, which he amended on April 12, 2010. On September 25, 2012, the District Court denied Mr. Fields' amended § 2255 motion, and dismissed the action. It also *sua sponte* denied Mr. Fields a certificate of appealability ("COA").

On August 1, 2013, Mr. Fields filed a notice of appeal to this Court, and filed a motion seeking a COA and a brief in support thereof on November 13, 2013. On July 30, 2014, after hearing oral arguments, this Court denied Mr. Fields' motion on all grounds. Mr. Fields' request for *certiorari* review by the United States Supreme Court was denied on June 8, 2015.

### D.    *Johnson v. United States.*

On June 26, 2015, the Supreme Court issued its decision in *Johnson*, invalidating the ACCA's residual clause as being too vague to provide adequate notice under the Due Process Clause. 135 S. Ct. at 2557. The Court also held that imposing an increased sentence under the residual clause of the ACCA violates the Constitution's guarantee of due process. Specifically, the Court concluded that "the indeterminacy of the wide-ranging inquiry required by the residual clause both

7

denies fair notice and invites arbitrary enforcement by judges," and "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Id.* Finding the residual clause "vague in all its applications," the Court overruled its contrary decisions in *Sykes v. United States*, 131 S. Ct. 2267 (2011) and *James v. United States*, 550 U.S. 192 (2007). *Id.* at 2562-63.

### E.    *Welch v. United States.*

After *Johnson* was decided, federal prisoners throughout the country sought to challenge their ACCA-enhanced sentences, as well as convictions and sentences imposed under materially indistinguishable residual clauses, such as that in 18 U.S.C. § 924(c). This led to conflict over whether *Johnson* announced a new substantive rule, which would apply retroactively to cases on collateral review, or whether it only announced a new procedural rule, which would not necessarily apply retroactively. On April 18, 2016, the Supreme Court resolved the issue, finding *Johnson*'s rule to be substantive and thus applicable retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265.

In light of *Johnson* and *Welch,* Mr. Fields' § 924(c) conviction cannot be sustained. And because Mr. Fields' conviction and death sentence under § 924(j) are wholly dependent upon his conviction under § 924(c), Mr. Fields' sentence of death must likewise be deemed void. Mr. Fields now requests authorization from this Court to file a successive § 2255 petition.

## LEGAL STANDARD

**Mr. Fields' Petition For Permission To File A Successive Motion In The District Court Under § 2255 Should Be Granted Because His Petition Depends On *Johnson*, And *Johnson* Announced A New Constitutional Rule Which Has Been Held To Be Retroactive By The Supreme Court.**

### A.  *Mr. Fields Can Make A Sufficient Showing Of Possible Merit To Warrant Fuller Exploration By The District Court.*

The gatekeeping Antiterrorism and Effective Death Penalty Act, as set forth in § 2255(h)(2), allows a prisoner to apply for leave to file a successive § 2255 motion based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).  Under this provision, a federal prisoner must make a *prima facie* showing that the petition to be filed is based on a (1) previously unavailable (2) new rule (3) of constitutional law that (4) has been made retroactive by the Supreme Court to cases on collateral review.  *Tyler v. Cain*, 533 U.S. 656, 662 (2001).

This Court has specified that, "*prima facie* showing" means "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." *In re Chase*, 804 F.3d 738, 739 (5th Cir. 2015) (citation omitted).  To be clear, the "showing of possible merit" does not refer to the merits of the claims asserted in the petition.  Rather, this standard only "relates to the possibility" that the gatekeeping "requirements for the filing of a second or successive petition" under § 2255(h)(2) will be satisfied. *In re Moore*, 67 F. App'x 252 (5th Cir. 2003).

9

In other words, an applicant need only make a *prima facie* showing that the § 2255(h)(2) standard is met, not a *prima facie* showing that his claim has merit. As further detailed below, Mr. Fields easily satisfies the gatekeeping requirements of § 2255(h)(2).

**B.     *Johnson Announced A New Rule Of Law That Was Previously Unavailable.***

The Supreme Court's decision in *Johnson* announced a new rule of constitutional law.  A case announces a new rule if its result was not "dictated by precedent existing at the time the defendant's conviction became final."  *Chaidez v. United States,* 133 S. Ct. 1103, 1107 (2013) (quoting *Teague v. Lane,* 489 U.S. 288, 301 (1989)).  In *Johnson,* the Supreme Court expressly overruled its prior decisions in *Sykes* and *James,* which had previously upheld the constitutionality of the ACCA's residual clause.  *Johnson,* 135 S. Ct. at 2563 ("Our contrary holdings in *James* and *Sykes* are overruled").  As the Supreme Court has made clear, "[t]he explicit overruling of an earlier holding no doubt creates a new rule."  *Whorton v. Bockting,* 549 U.S. 406, 416 (2007) (citation omitted).

Further, the Supreme Court has put to rest any possible dispute on this front. In *Welch v. United States,* announced on April 18, 2016, the Court proclaimed: "It is undisputed that *Johnson* announced a new rule."  *Welch,* 136 S. Ct. at 1264.

*Welch* also put to rest any dispute that the *Johnson* rule is one of "constitutional law," and held that this rule was previously unavailable to petitioners such as Mr. Fields. *See id.*

**C.    *Johnson Is Retroactive, And The Supreme Court Has "Made" It Retroactive To Cases On Collateral Review.***

*Welch* also answered the final question this Court must consider before authorizing Mr. Fields to file his successive § 2255 motion. In *Welch,* the Supreme Court explained that *Johnson*'s rule is substantive, because that rule means the residual clause "can no longer mandate or authorize any sentence. *Johnson* establishes, in other words, that 'even the use of impeccable factfinding procedures could not legitimate' a sentence based on that clause." 136 S. Ct. at 1265 (quoting *United States* v. *United States Coin & Currency*, 401 U.S. 715, 724 (1971)). As such, the Court held, "*Johnson* is thus a substantive decision and has retroactive effect under *Teague* in cases on collateral review." *Id*.

**D.    *Johnson Invalidates § 924(c)'s Residual Clause.***

Not only does *Johnson* narrow the scope of the ACCA's residual clause, but as relevant here, it also narrows the scope of 18 U.S.C. § 924(c), and "necessarily carr[ies] a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Schriro v. Summerlin,* 542 U.S. 348, 352 (2004). Section 924(c) criminalizes using or carrying a firearm during and in relation to a "crime of violence." But after *Johnson,* categorically considering certain predicate

11

offenses to be "crime[s] of violence" is inconsistent with the Due Process Clause. *Johnson* therefore alters what conduct § 924(c) makes criminal.

Here, Mr. Fields stands convicted of an act that the law does not make criminal, because *Johnson* establishes that the so-called "crime of violence" underlying his § 924(c) conviction cannot constitutionally be considered a crime of violence. *See Bousley v. United States,* 523 U.S. 614, 620 (1998). Indeed, in a similar scenario, and upon the government's concession, the Second Circuit recently granted a motion to authorize a successive § 2255 motion based on a *Johnson* challenge to a § 924(c) conviction. *See Freeman v. United States,* No. 15-3687 (2d Cir. Jan. 26, 2016). The Seventh Circuit recently did the same in *Ruiz v. United States,* No. 16-1193 (7th Cir. Feb. 19, 2016).

### E.   *Mr. Fields Is Entitled To Certification Under 28 U.S.C. § 2255(h)(2).*

Mr. Fields has made a "*prima facie* showing," 28 U.S.C. § 2244(b)(3)(C), and his application satisfies § 2255(h)(2) because he has made a "sufficient showing of possible merit to warrant a fuller exploration by the district court."

WHEREFORE, because Mr. Fields has presented a *prima facie* showing of a tenable claim that all the requirements of § 2255(h) are satisfied, he respectfully requests that his motion be granted and that he be allowed forthwith to present the attached Motion To Vacate Conviction Under 28 U.S.C. § 2255 before the district court.

Respectfully Submitted,


<u>/s/ Jeffrey Ellis</u>
JEFFREY ELLIS
OREGON CAPITAL RESOURCE
CENTER
Oregon Bar Number 102990
Texas Bar Number 24034132
621 SW Morrison St., Suite 1025
Portland, OR 97205
(206) 218-7076
jeffreyerwinellis@gmail.com

PETER J. ISAJIW
KING & SPALDING LLP
New York Bar Number 4151239
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100
pisajiw@kslaw.com

Counsel for Sherman Lamont Fields

13

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    APPELLANT: Sherman Lamont Fields

2.    APPELLANT'S ATTORNEY: Jeffrey Ellis, Oregon Capital Resource Center, 621 SW Morrison Street, Suite 1025, Portland, OR  97205

3.    APPELLANT'S PRO BONO ATTORNEY: Peter J. Isajiw, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY  10036

4.    APPELLEE: United States of America

5.    APPELLEE'S ATTORNEY: Joseph H. Gay, Jr., United States Attorney, Western District of Texas, 601 N.W. Loop 410, Suite 600, San Antonio, TX  78216

6.    APPELLEE'S ATTORNEY: Jennifer Sheffield Freel, United States Attorney, Western District of Texas, 816 Congress Avenue, Suite 1000, Austin, TX  78701

7.    APPELLEE'S ATTORNEY: Gregory S. Gloff, United States Attorney, Western District of Texas, 800 Franklin, Suite 280, Waco, TX 76701

/s/ Jeffrey Ellis
Jeffrey Ellis

14

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 17th day of May, 2016, a copy of the foregoing Application For Leave To File A Successive Motion Under 28 U.S.C. § 2255 was served via the CM/ECF electronic filing system upon:

Gregory S. Gloff, United States Attorney
Western District of Texas
800 Franklin, Suite 280
Waco, TX  76701
Greg.Gloff@usdoj.gov

Joseph H. Gay, Jr., United States Attorney
Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, TX  78216
Joseph.Gay@usdoj.gov

Jennifer Sheffield Freel, United States Attorney
Western District of Texas
816 Congress Avenue, Suite 1000
Austin, TX  78701
jennifer.freel@usdoj.gov

/s/ Jeffrey Ellis
Jeffrey Ellis

## <u>CERTIFICATE FOR ECF PLEADINGS</u>

I hereby certify that: (1) required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: May 17, 2016

/s/ Jeffrey Ellis
Jeffrey Ellis

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

SHERMAN LAMONT FIELDS,    )
    )    Criminal Case No. W-01-CR-164
    Movant,    )    Civil Case No. W-09-CV-009
    )
v.    )
    )    **THIS IS A CAPITAL CASE**
UNITED STATES OF AMERICA,    )
    )
    Respondent.    )

## MOTION TO VACATE CONVICTION UNDER 28 U.S.C. § 2255

Movant, Sherman Lamont Fields, through undersigned counsel, hereby moves to set aside the judgment in this case pursuant to 28 U.S.C. § 2255. As explained below, Mr. Fields' convictions under 18 U.S.C. § 924(c)(1) and death sentence pursuant to 18 U.S.C. § 924(j), which was imposed solely for his conviction under § 924(c), must be vacated in light of the Supreme Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which was made retroactive on collateral review by *Welch v. United States*, 136 S. Ct. 1257 (2016).

## INTRODUCTION

On January 30, 2004 Mr. Fields was convicted of one count of using a firearm causing death during and in relation to a "crime of violence" in violation of 18 U.S.C. § 924(c)(1) (Count Three). The "crime of violence" underlying the § 924(c)(1) charge was escape, 18 U.S.C. § 751(a). Mr. Fields was subsequently sentenced to death under 18 U.S.C. § 924(j), *solely* pursuant to his conviction under this count. Mr. Fields was convicted of two additional noncapital counts of using a firearm during and in relation to a crime of violence, both in

violation of § 924(c)(1).  The crimes of violence underlying these noncapital counts were escape (Count Five) and carjacking, in violation of 18 U.S.C. § 2119 (Count Seven).[1]

However, following the United States Supreme Court's decision in *Johnson*, 135 S. Ct. 2551, neither escape nor carjacking can categorically qualify as "crime[s] of violence" under § 924(c).  Therefore, Mr. Fields' conviction and death sentence under Count Three, as well as his convictions and sentences under Counts Five and Seven, cannot stand.

The portion of § 924(c) defining a "crime of violence" has two alternative clauses.  The first – § 924(c)(3)(A) – is the "force" or "elements" clause.  This clause categorizes any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" as a "crime of violence."  The second – § 924(c)(3)(B) – is the "residual" clause.  This catchall clause requires the court to look at whether the *ordinary case* of a felony would subject the victim to "a substantial risk [of] physical force" and if so, categorizes that felony as a "crime of violence," regardless of the *particular* facts underlying that felony.

The § 924(c) residual clause is materially indistinguishable from the Armed Career Criminal Act (ACCA) residual clause (18 U.S.C. § 924(e)(2)(B)(ii)) that the Supreme Court struck down as void for vagueness in *Johnson*.  It follows that the § 924(c) residual clause is also unconstitutionally vague.  Hence, neither escape nor carjacking can qualify as "crime[s] of violence" under the § 924(c) residual clause.

Likewise, both escape and carjacking fail to categorically qualify as "crime[s] of violence" under the § 924(c) force clause.  Neither the escape statute nor the carjacking statute underlying Mr. Fields' § 924(c) convictions contains as an element the "use, attempted use, or

---

1    Mr. Fields was convicted of four additional noncapital counts, as detailed below.  He was sentenced to death pursuant to his conviction under Count Three and sentenced to a total of 715 months' imprisonment pursuant to his convictions under the six noncapital counts.

threatened use of physical force." Additionally, both escape and carjacking fail to categorically qualify as "crime[s] of violence" because they (1) do not require the use, attempted use, or threatened use of *violent physical force* and (2) do not require the *intentional* use, attempted use, or threatened use of the same.

Because neither escape nor carjacking can satisfy the "crime of violence" element of § 924(c), Mr. Fields' convictions pursuant to this statute in Counts Three, Five, and Seven cannot be constitutionally sustained. These convictions violate due process, result in a fundamental miscarriage of justice, and were entered in excess of this Court's jurisdiction.

Mr. Fields is entitled to relief under 28 U.S.C. § 2255(h)(2) because *Johnson* established a new rule of constitutional law that has been made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. *See Welch*, 136 S. Ct. at 1263-68. Mr. Fields' petition is timely under 28 U.S.C. § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in *Johnson*. Therefore, Mr. Fields respectfully requests that this Court grant his § 2255 motion, vacate his death sentence, and vacate his convictions under Counts Three, Five, and Seven, which were all predicated on 18 U.S.C. § 924(c).[2]

## STATEMENT OF FACTS

### A.   *Indictment, Trial, Guilty Verdict And Sentencing.*

On May 13, 2003, the Government filed an indictment in the United States District Court for the Western District of Texas, charging Mr. Fields with (1) conspiring to escape from federal custody, in violation of 18 U.S.C. §§ 371, 751 and 1791(a); (2) escaping from federal custody, in

---

[2] Mr. Fields is filing in the Fifth Circuit, contemporaneously with the filing of the instant motion, an Application for Leave to File a Successive Motion Under 28 U.S.C. § 2255. Mr. Fields is also filing a motion asking this Court to hold his § 2255 motion in abeyance pending the Fifth Circuit's authorization to file a successive § 2255 motion.

violation of 18 U.S.C. § 751(a); (3) using and carrying a firearm causing death during and in relation to escape, in violation of 18 U.S.C. § 924(c)(1); (4) carjacking, in violation of 18 U.S.C. § 2119; (5) using and carrying a firearm during and in relation to carjacking, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); (6) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (7) using and carrying a firearm during and in relation to escape, in violation of 18 U.S.C. § 924(c)(1).  On May 23, 2003, the Government gave notice it would seek the death penalty under Count Three.  The relevant sentencing statute was 18 U.S.C. § 924(j)(1).

Trial started in January 2004.  On January 30, 2004, the jury convicted Mr. Fields on all counts.  From February 2 to February 5, 2004, the same jury heard testimony and argument in the penalty phase.  On February 5, the jury retired to deliberate.  On February 6, the jury declared itself deadlocked and unable to agree on punishment, and was instructed to keep deliberating.  It recommended death shortly thereafter.

The district court entered judgment on April 12, 2004, sentencing Mr. Fields to death under § 924(j), based on his conviction under Count Three, a "crime of violence" under § 924(c) for which escape was the predicate crime.  The court also sentenced Mr. Fields to 715 months of imprisonment on the noncapital counts.[3]

### B.     *Direct Appeal.*

Mr. Fields filed a notice of appeal the next day.  The conviction and death sentence were affirmed by the Fifth Circuit Court of Appeals on March 29, 2007, with Benavides, J.,

---

[3]  Mr. Fields was sentenced to 60 months pursuant to Counts One and Two, and 115 months each pursuant to Counts Four and Six, with sentences to run concurrently.  He was sentenced to an additional 300 months pursuant to Count Five and a separate 300 months pursuant to Count Seven, with sentences to run consecutively to each other and consecutively to the sentences in the remaining noncapital Counts.

dissenting. *See United States v. Fields*, 483 F.3d 313, 323 (5th Cir. 2007). Mr. Fields sought *certiorari* in the United States Supreme Court, which denied review on January 14, 2008.

### C.      *Previous § 2255 Petition.*

On January 14, 2009, Mr. Fields filed a motion for a new trial and to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, which he amended on April 12, 2010. On September 25, 2012, the District Court denied Mr. Fields' amended § 2255 motion, and dismissed the action. It also *sua sponte* denied Mr. Fields a certificate of appealability ("COA").

On August 1, 2013, Mr. Fields filed a notice of appeal to The Fifth Circuit Court of Appeals, and filed a motion seeking a COA and a brief in support thereof on November 13, 2013. On July 30, 2014, after hearing oral arguments, The Fifth Circuit denied Mr. Fields' motion on all grounds. Mr. Fields' request for *certiorari* review by the United States Supreme Court was denied on June 8, 2015.

### D.      *Johnson v. United States.*

On June 26, 2015, the Supreme Court issued its decision in *Johnson* and invalidated the ACCA's residual clause as too vague to provide adequate notice under the Due Process Clause of the Constitution. 135 S. Ct. at 2557. Specifically, the Court concluded that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges," and that "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Id*. Finding the residual clause "vague in all its applications," the Court overruled its contrary decisions in *Sykes v. United States*, 131 S. Ct. 2267 (2011) and *James v. United States*, 550 U.S. 192 (2007). *Id*. at 2562-63.

### E.      *Welch v. United States.*

After *Johnson* was decided, federal prisoners throughout the country sought to challenge ACCA-enhanced sentences, as well as convictions and sentences imposed under materially

indistinguishable residual clauses, such as that in 18 U.S.C. § 924(c). This led to conflict over whether *Johnson* announced a new substantive rule, which would apply retroactively to cases on collateral review, or whether it only announced a new procedural rule, which would not necessarily apply retroactively.

On April 18, 2016, the Supreme Court resolved the issue, holding that the rule announced in *Johnson* was substantive and thus applicable retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265. In light of *Johnson* and *Welch,* Mr. Fields' § 924(c) conviction cannot be sustained.

## ARGUMENT

**I.      In Light Of *Johnson*, Mr. Fields' 18 U.S.C. § 924(c) Convictions For Using And Carrying A Firearm In Relation To A "Crime Of Violence" Cannot Be Sustained Because Escape And Carjacking Fail To Categorically Qualify As Crimes Of Violence.**

Mr. Fields' § 924(c) convictions for using and carrying a firearm during and in relation to a crime of violence are void because the "crime of violence" element as defined and required by § 924(c) cannot be satisfied here. Specifically, the predicate offenses of escape and carjacking cannot categorically qualify as "crime[s] of violence" under § 924(c).

Under § 924(c)(3), a felony qualifies as a "crime of violence" in one of two ways. It must either have "as an element the use, attempted use, or threatened use of physical force against the person or property of another," or "involve[] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). The first clause – § 924(c)(3)(A) – is known as the "force" or "elements" clause. The second – § 924(c)(3)(B) – is a catchall provision, known as the "residual" clause.

Neither escape nor carjacking can qualify as a "crime of violence" under the residual clause because that clause is void for vagueness under *Johnson*. In *Johnson*, the Supreme Court

6

struck down the ACCA's residual clause (18 U.S.C. § 924(e)(2)(B)(ii)) as unconstitutionally vague. 135 S. Ct. 2551, 2557 (2015). It follows that § 924(c)'s materially indistinguishable residual clause (§ 924(c)(3)(B)) is also unconstitutional.

Likewise, escape and carjacking both fail to qualify as a "crime of violence" under the statute's force clause (§ 924(c)(3)(A)) because (1) both crimes lack as an element the use, attempted use, or threatened use of violent physical force, and (2) both can be accomplished without the intentional use, attempted use, or threatened use of the same.

Thus, neither escape nor carjacking can serve as a predicate "crime of violence" in Mr. Fields' § 924(c) convictions.

A.    *Section 924(c)'s Residual Clause Is Unconstitutionally Vague.*

Escape and carjacking cannot qualify as a "crime of violence" under § 924(c)(3)'s residual clause because the clause is void for vagueness under *Johnson*. In *Johnson*, the Supreme Court decided that the ACCA's residual clause ("otherwise involves conduct that presents a serious potential risk of physical injury to another") is unconstitutionally vague. This decision must also apply to the parallel "crime of violence" definition in § 924(c)(3)'s residual clause, as § 924(c)(3)(B) suffers from the same flaws that compelled the Supreme Court to declare the ACCA residual clause void for vagueness. Using § 924(c)(3)(B) to categorize a predicate conviction as a "crime of violence," therefore, violates due process.

The Fifth Circuit has recently struck down the residual clause in 18 U.S.C. § 16(b) as unconstitutionally vague in light of *Johnson*. *See United States v. Gonzalez-Longoria*, 813 F.3d 225, 235 (5th Cir. 2016). That clause is identical to the residual clause in § 924(c)(3)(B). The Ninth Circuit in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015) and the Seventh Circuit in *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015) have similarly struck down such residual clauses on constitutional grounds. The rationale of *Gonzalez-Longoria*, *Dimaya* and *Vivas-Ceja* equally

7

applies to the determination of whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c). Relying on the same reasoning of *Dimaya* and *Vivas-Ceja*, two district courts recently found that the § 924(c) residual clause was void for vagueness. *See United States v. Lattanaphom*, 2106 WL 393545 (E.D. Cal. 2016); *United States v. Edmundson*, 2015 WL 9582736 (D. Md. Dec. 30, 2015). This Court should do the same.

> 1.     *Johnson* Expressly Overruled The "Ordinary Case" Approach To Determining Whether A Felony Qualifies As A "Crime Of Violence" Under § 924(c)

In *Johnson*, the Supreme Court began its analysis by noting that ACCA analysis "requires courts to use a framework known as the categorical approach when deciding whether an offense 'is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.'" 135 S. Ct. at 2557 (citation omitted) (emphasis added). This analysis requires asking not whether a crime actually "has as an element the use . . . of physical force," but whether "the crime 'involves conduct' that presents too much risk of physical injury." *Id.*

To perform the analysis, a court asks "whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another." *Id.* at 2564 (emphasis added) (quotations omitted). The second step of the court's analysis is also dependent on the ordinary case. Specifically, the court is asked "to judge whether that abstraction presents a serious potential risk of physical injury." *Id.* at 2557.

The Supreme Court held that these "two features of the residual clause conspire to make it unconstitutionally vague." *Id.* To begin with, the Court held that it is impossible for a sentencing court to even get past the first step because there is too much uncertainty about what constitutes the ordinary case of a crime. *Id.* The Court concluded that the "the residual clause offers no reliable way to choose between [] competing accounts of what 'ordinary' . . . involves."

8

*Id*. at 2558. Specifically, the Court explained that a statistical analysis of reported cases, expert evidence, Google searches, and gut instinct are all equally unreliable in determining the "ordinary case." *Id.* at 2557 (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing *en banc*)).

The Court then held that the second step required by the residual clause is equally flawed because there is too much "uncertainty about how much risk it takes for a[n ordinary case of such a] crime to qualify as a violent felony." *Id.* at 2558. To be clear, the Court's reasoning on the second step did not turn on the type of risk, *i.e.*, "serious potential risk of physical injury." Rather, like the first step, it also turned on the constitutionally inadequate "ordinary case" inquiry. The Court reasoned, "[i]t is one thing to apply an imprecise 'serious potential risk' standard to real-word facts; it is quite another to apply it to a judge-imagined [ordinary case] abstraction." *Id.* With these words, the Court conveyed that the constitutionality of the ACCA residual clause would not have been in question if the statute had required the jury to determine the risk based on the individual facts in the case. *Id.* The Court explained that it was not doubting the constitutionality of any statute which "require[s] gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*." *Id.* at 2561 (emphasis added). However, because under the ACCA residual clause, the quantum of risk had to be assessed based on the ordinary case, the clause was constitutionally domed. The Court held that such indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary" case analysis is more than the "Due Process Clause tolerates." *Id.* at 2558.

Thus, *Johnson* not only invalidated the ACCA residual clause, it also invalidated the "ordinary case" analysis and any statutory provisions that compel such an analytical framework. The Court's reasoning and holding lead to the inevitable conclusion that the only way to apply

9

the residual clause is to use the "ordinary case" analysis, and that the "ordinary case" analysis is impossible to apply in a constitutional manner.

2.    *Johnson* Means That § 924(c)(3)(B) Is Unconstitutionally Vague.

The statutory phrase at issue in this case is essentially identical to the ACCA residual clause.[4]    To be sure, 18 U.S.C. § 924(e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not identical.[5]    But the differences have no impact on the constitutional analysis.  The ACCA, 18 U.S.C. § 924(e), provides for an enhanced penalty for those convicted of possessing a firearm after sustaining three or more convictions for a "serious drug offense" or a "violent felony."  The ACCA's definition of "violent felony" includes the residual clause struck down in *Johnson,* a clause materially indistinguishable from the § 924(c) residual clause. The ACCA provides:

Any crime punishable by imprisonment for a term exceeding one year . . . that –

(i)    Has as an element the use, attempted use, or threatened use against the person of another, or

---

[4]  Courts regularly compare the similarities between the residual clause in the ACCA to the clause at issue here.  Although the comparison tends to specifically address 18 U.S.C. § 16(b), that statute is identical to § 924(c)(3)(B).  *See, e.g., Chambers v. United States*, 555 U.S. at 133, n.2 (2009) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring).  *See also United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)); *United States v. Aragon*, 983 F.2d 1306, 1314 (4th Cir. 1993) (same); *United States v. Keelan*, 786 F.3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA "otherwise" clause and § 16(b) as "analogous"); *Roberts v. Holder*, 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis); *United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) (noting that despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)").

[5]  In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii). § 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

10

(ii)   Is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added).  Although the risk at issue in the ACCA is a risk of serious physical injury, and the risk at issue in § 924(c) is a risk that strong physical force will be used, this difference is immaterial to the due process problem and has no impact on the *Johnson* decision.  *See Gonzalez-Longoria*, 813 F.3d at 233 (noting that the "differences [between 18 U.S.C. § 16(b) and 18 U.S.C. § 924(e)(2)(B)(ii)] are slight").[6]  The *Johnson* Court's holding did not turn on the type of risk, but rather how a court assesses and quantifies the risk.[7]

The two-step process is the same under both the ACCA and § 924(c).  Both statutes require courts first to imagine the "ordinary case" embodied by a felony, and then decide if it

---

[6]  *See also Vivas-Ceja*, 808 F.3d at 722 ("§ 16(b) substitutes 'substantial risk' for the residual clause's 'serious potential risk.'  Any difference between the two phrases is superficial. Just like the residual clause, § 16(b) offers courts no guidance to determine when the risk involved in the ordinary case of a crime qualifies as 'substantial.'"); *Jimenez-Gonzales v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other).  *See also United States v. Gomez-Leon*, 545 F.3d 777 (9th Cir. 2008); *United States v. Coronado-Cervantes*, 154 F.3d 1242, 1244 (10th Cir. 1998); *United States v. Kirk*, 111 F.3d 390, 394 (5th Cir. 1997); *United States v. Bauer*, 990 F.2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as "immaterial" and holding that U.S.S.G. § 4b1.2, which uses the ACCA language, "is controlled by" a decision that interprets § 16(b)).

[7]  Of course, many federal and state criminal laws include "risk" standards that employ adjectives similar to those in the ACCA and § 924(c), such as "substantial," "grave," and "unreasonable."  And the Supreme Court in *Johnson* said it did not mean to call most of these into question.  But, as Justice Scalia's majority opinion observed, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct."  By contrast, the ACCA's residual clause, and § 924(c)(3) too, require it to be applied to "an idealized ordinary case of the crime," an "abstract inquiry" that "offers significantly less predictability."  *Johnson*, 135 S. Ct. at 2558.

qualifies as a crime of violence by assessing the quantum of risk posed by the "ordinary case." [8]

The Fourth Circuit held exactly that in *United States v. Avila*, 770 F.3d 1100, 1107 (4th Cir.

2014) in construing § 16(b):

> [E]very set of conceivable facts covered by first-degree burglary does not have to
> present a serious risk of injury for it to qualify as a crime of violence.  It is
> sufficient if "the conduct encompassed by the elements of the offense, in the
> ordinary case, presents a serious potential risk of injury to another."  *James*, 550
> U.S. at 208, 127 S. Ct. 1586.  As long as an offense is of a type that, by its nature,
> presents a substantial risk that physical force against the person or property of
> another may be used, it satisfies the requirements of 18 U.S.C. § 16(b).

*Id.*  And this Circuit agreed, noting that far from all burglaries would qualify as crimes of

violence.  *Gonzalez-Longoria*, 813 F.3d at 233.

*Gonzalez-Longoria* and *Avila* control here because § 16(b) and § 924(c)(3)(B) are

identical.[9]  Consistent with *Gonzalez-Longoria* and *Avila*, in *United States v. Fuertes*, 805 F.3d

485, 498 (4th Cir. 2015), the Fourth Circuit directly applied the "ordinary case" inquiry to the

§ 924(c) residual clause.  805 F.3d at 500 n.6.  *See also United States v. Naughton*, 621 Fed.

---

[8]  Both the ACCA and § 924(c)(3)(B) require courts to discern what the ordinary case of a
crime is by using the categorical approach.  *See, e.g., United States v. Fuertes*, 805 F.3d
485,498 (4th Cir. 2015); *United States v. Butler*, 496 Fed. Appx. 158, 161 n.4 (3d Cir. 2012);
*Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v. Serafin*, 562 F.3d 1104,
1108 (10th Cir. 2009); *United States v. Green*, 521 F.3d 929, 932 (8th Cir. 2008); *United
States v. Acosta*, 470 F.3d 132, 134 (2d Cir. 2006); *United States v. Amparo*, 68 F.3d 1222,
1225 (9th Cir. 1995).  Courts may not consider the factual means of committing any given
offense, but must consider the nature of the offense in the "ordinary case," regardless of
whether the ACCA, § 924(c)(3)(B), or § 16(b) is at issue.

[9]  Other courts likewise require the ordinary case analysis when the statutory language of
§ 16(b) (and thus § 924(c)(3)(B)) is at issue.  *See, e.g., Keelan*, 786 F.3d at 871 (adopting
"ordinary case" analysis for § 16(b)); *United States v. Ramos-Medina*, 706 F.3d 932, 938 (9th
Cir. 2012) (citing *James* as the source of the "ordinary case" analysis required by § 16(b));
*Van Don Nguyen v. Holder*, 571 F.3d 524, 530 (6th Cir. 2009) (considering § 16(b) and
concluding that "[t]he proper inquiry is one that contemplates the risk associated with the
proscribed conduct in the mainstream of prosecutions brought under the statute); *United
States v. Sanchez-Garcia*, 501 F.3d 1208, 1213 (10th Cir. 2007) (same).

Appx. 170, 178 (4th Cir. Sept. 2, 2015) (applying the ordinary case inquiry to § 924(c)(3)(B)). Thus, as Judge Grimm explained in *Edmundson*, the "§ 924(c) residual clause suffers from exactly the same double indeterminacy as the ACCA residual clause." *Edmundson*, 2015 WL 9311983, at *4. Moreover, the Seventh and Ninth Circuits recognized the same in invalidating § 16(b), the identical twin to § 924(c)(3)(B), as void for vagueness under *Johnson*. *See Vivas-Ceja*, 808 F.3d at 723; *Dimaya*, 803 F.3d at 1117.

It is also noteworthy that in litigating *Johnson*, the Government, through the Solicitor General, agreed that the phrases at issue in *Johnson* and here pose the same problem. Upon recognizing that the definitions of a "crime of violence" in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

*Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (*available at* 2015 WL 1284964 at *22-23) (March 30, 2015). The Solicitor General was right – § 924(c)(3)(B) and the ACCA are essentially the same statute and contain the same flaws. This Court should hold the Government to that concession.

Section 924(c)(3)(B), like the ACCA residual clause, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is. *Fuertes*, 805 F.3d at 500 n.6; *Avila*, 770 F.3d at 1107; *Ayala*, 601 F.3d at 267; *Van Don Nguyen*, 571 F.3d at 530; *Sanchez-Garcia*, 501 F.3d at 1213. Since these are the identical analytical steps that brought down the ACCA residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed in *Johnson*. As a consequence, the residual clause cannot be used to support a conviction under § 924(c).

13

**B.**     ***Neither Escape Nor Carjacking Can Categorically Qualify As "Crime[s] Of Violence" Under The Force Clause.***

1.     The Categorical Approach Applies In Determining Whether An Offense Qualifies As A "Crime Of Violence" Under The Force Clause.

In determining whether an offense qualifies as a "crime of violence" under the force clause, sentencing courts must employ the categorical approach. *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *United States v. Williams*, 343 F.3d 423, 431 (5th Cir. 2003).[10] This approach requires that courts "look only to the statutory definitions – *i.e.*, the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Descamps*, 133 S. Ct. at 2283 (citation omitted). *See also Williams*, 343 F.3d at 431 ("The proper inquiry is whether a particular defined offense, in the abstract, is a crime of violence . . . . We do not consider the facts underlying Williams's conviction; his actual conduct is immaterial").

As a result, post-*Descamps*, for an offense to qualify as a "crime of violence" under the force clause, the offense must have as an element the use, attempted use, or threatened use of "physical force" against another person. 18 U.S.C. § 924(c)(3)(A). And "physical force" means *violent* force – that is "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original).[11]

---

[10] Although *Descamps* involved the categorical approach as applied to the ACCA, this same categorical approach applies in determining whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c). *See, e.g.*, *Williams*, 343 F.3d at 431.

[11] Courts of Appeals have consistently held that 18 U.S.C. § 16(a) (which is all but identical to § 924(c)(3)(A)) contemplates "destructive," "violent force" – not *de minimis* force. *See, e.g.*, *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001); *see also Flores-Lopez v. Holder*, 685 F.3d 857, 864 (9th Cir. 2012) (requiring "use of violent, physical force"); *United States v. Serafin*, 562 F.3d 1105, 1109 (10th Cir. 2009); *Jobson v. Ashcroft*,

2.    Escape Fails To Categorically Qualify As A "Crime Of Violence" Under The Force Clause.

Under the test enunciated by *Descamps* and affirmed by *Williams*, Mr. Fields' offense of escape fails to categorically qualify as a § 924(c) "crime of violence" under the force clause. It is not enough that the predicate crime charged under § 924(c) include some requirement of specific *intent*. To qualify as a crime of violence under the force clause (also known as the "elements" clause), the statute must have as a required *element* the intent to use strong physical force. No such element is required or even contemplated by the escape statute (§ 18 U.S.C. § 751(a)):

> (a) Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both

Categorically classifying escape as a "crime of violence" is subject to the same constitutional defects that now prevent courts from doing so with burglary. This Circuit has observed that "[t]he act of . . . breaking and entering into someone's home does not, in and of itself, normally cause physical injury. Rather, risk of injury arises because . . . the burglar might confront a resident in the home after breaking and entering." *Gonzalez-Longoria*, 813 F.3d at 233 (quoting *Johnson*, 135 S.Ct. at 2557). As the *Gonzalez-Longoria* court noted, a crime may thus fall under the ambit of a "crime of violence" "even if the physical [force] is remote from the criminal act." *Id.* (quoting *Johnson*, 135 S. Ct. at 2559). And, as the *Gonzalez-Longoria* court

---

326 F.3d 367, 373 (2d Cir. 2003); *Bazan-Reyes v. INS*, 256 F.3d 600, 611 (7th Cir. 2001) ("'physical force' in 18 U.S.C. § 16(b) refers to actual violent force"). Indeed, the Supreme Court in *Johnson* cited lower court opinions defining "physical force" under § 16 when defining "physical force" in the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). *See* 559 U.S. at 140 (citing *Flores*, 350 F.3d at 672).

reasoned, the logical follow-up is: "[b]ut how remote is too remote?" *Id.*  The answer, as the

Fifth Circuit held in *Gonzalez-Longoria*, is: "only so remote as to be 'required' by the crime and

definitely not so remote as the mere 'possibility that harm will result.'"  This statutory guidance

is woefully insufficient and indeed the Fifth Circuit, following *Johnson*, has held it to be

unconstitutionally vague.  *Id.*

Like robbery, escape in and of itself does not require physical force, or even threatened

physical force.  Rather, the risk of use of force is tangential to the act of escape – there is at most

a possibility that physical force will be used.[12]  Indeed, the Government conceded as much in

Mr. Fields' trial: the prosecution never alleged that Mr. Fields' escape *was* violent.  Mr. Fields

was alleged to have offered money to a corrections officer, who in turn opened the back door to

the correctional facility and let Mr. Fields out.  Instead, the prosecution argued that escape *in the*

*abstract* is a violent crime, attempting to convict via the residual clause of § 924(c):

> One of the things that you have to remember about escape that the Judge told you
> . . . it's a crime of violence.  Why is escape a crime of violence?  Because bad
> things happen when desperate men are on the run from the law and have guns.
> They can intimidate people.  They can kill people.  They can rob people.  They
> can shoot people.  Bad things happen.  That's why it's a violent offense.

Trial Tr. 1994 at 11-17.  This is precisely the type of "judge-imagined abstraction" that *Johnson*

held to be unconstitutional.  *See* 135 S. Ct. at 2557.  Both the Supreme Court and the Fifth Circuit

---

[12]  Count Three also includes a theory that Mr. Fields' conspiracy to escape (Count One) may be
a predicate "crime of violence" for his capital conviction.  However, this theory is doomed
for the same reasons that preclude escape from being categorically considered a crime of
violence under § 924(c).  And indeed, several courts have held that conspiracy cannot
categorically qualify as a § 924(c) "crime of violence."  *See, e.g.*, *United States v. Gonzalez-
Ruiz*, 794 F.3d 832 (7th Cir. 2015) (conspiracy to commit armed robbery not violent felony);
*United States v. Melvin,* No. 13-4857 (4th Cir. Oct. 20, 2015) (conspiracy to commit robbery
with a dangerous weapon not a violent felony); *United States v. Luong,* 2016 WL 1588495
(E.D. Cal. 2016) (conspiracy to commit Hobbs Act robbery not a § 924(c) crime of violence);
*United States v. Edmundson*, 2015 WL 9582736 (D. Md. 2015) (same).

have held that the Constitution does not tolerate such generalities. *Johnson*, 135 S. Ct. at 2557; *Gonzalez-Longoria*, 813 F.3d at 233 (citing *Johnson*). Simply put, Mr. Fields' escape cannot be considered a "crime of violence" pursuant to § 924(c) when analyzed in either the abstract or under the actual facts of his conviction. Therefore, a conviction cannot be constitutionally sustained under § 924(c) for Counts Three and Seven.

> 3.    Carjacking Fails To Categorically Qualify As A "Crime Of Violence" Under The Force Clause.

Mr. Fields' offense of carjacking also fails to qualify as a § 924(c) "crime of violence" under the force clause. Because "the full range of conduct" covered by the carjacking statute does not require "violent force," it simply cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause. *United States v. Torres-Miguel,* 701 F.3d 165, 171 (4th Cir. 2012). Like escape, carjacking does not qualify as a § 924(c) "crime of violence" because under the carjacking statute, the offense can be accomplished by "intimidation," which (1) does not require the use, attempted use, or threatened use of *violent physical force* and (2) does not require the *intentional* use, attempted use, or threatened use of the same. *See Johnson*, 559 U.S. at 140.

> a.    *Carjacking Does Not Require The Use, Attempted Use, Or Threatened Use Of Violent Physical Force*

Carjacking, as defined by 18 U.S.C. § 2119, provides:

> Whoever, with the intent to cause death or serious bodily harm, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall--
>
> > . . . (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

Because the "full range of conduct" covered by the carjacking statute does not require "violent force," carjacking cannot categorically qualify as a "crime of violence" under § 924(c)(3)'s force clause. *See, e.g.*, *Torres-Miguel*, 701 F.3d at 171.

17

The Fourth Circuit's decision in *Torres-Miguel* is directly on point. In that case, the Fourth Circuit unequivocally held that the threat of *any physical injury,* even "serious bodily injury or death," does not necessarily require the use of physical force – let alone "violent force." *Id.* at 165. At issue in *Torres-Miguel* was the defendant's prior conviction for the California offense of willfully threatening to commit a crime which "will result in death or great bodily injury to another." 701 F.3d at 168 (citing Cal. Penal Code § 422(a)). The question was whether the statute had an element equating to a threat of "violent force" under the force clause of U.S.S.G. § 2L1.2, *id.*, which is in all relevant respects identical to the § 924(c) force clause.

Despite the "death or great bodily injury" element in the statute, the *Torres-Miguel* court held that the offense was missing a "violent force" element, and thus could not categorically qualify as a "crime of violence" under the force clause. *Id.* at 168-69. The court reasoned that "[a]n offense that *results* in physical injury, but does not [necessarily] involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence." *Id.* at 168. Relying on reasoning espoused by the Fifth Circuit, the court observed that "of course, a crime may *result* in death or serious injury without involving *use* of physical force," since there are many ways to cause physical injury – even death – without use of "violent force." *Id.* at 168-69 (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010) (emphasis added).

The *Torres-Miguel* Court also relied on the Second Circuit's decision in *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003) in reaching its holding. At issue in that case was whether a prior conviction for third degree assault under Connecticut law qualified as a "crime of violence" under the force clause. *Id.* at 194. The Connecticut statute "require[d] the state to prove that the defendant had intentionally caused physical injury." *Id.* at 193. Nonetheless, the "Second Circuit [] held that [the statute] does not constitute a crime of violence . . . because there

18

is a difference between causation of an injury, which is all that the Connecticut statute []
required, and an injury's causation by the use of physical force." *Id.* at 169 (citing *Chrzanoski*,
327 F.3d at 194) (internal quotations omitted). The Second Circuit explained that "an individual
could be convicted of intentional assault in the third degree for injury caused not by physical
force, but by guile, deception, or even deliberate omission." *Chrzanoski*, 327 F.3d at 195.

For further support, the *Torres-Miguel* court relied on the Tenth Circuit's decision in
*United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005). In that case, the Tenth Circuit
"explained that although the Colorado [third degree assault] statute required [an act causing]
bodily injury, imposing that injury does not necessarily include the use or threatened use of
physical force as required by the Guidelines and so the Colorado crime was not categorically a
crime of violence under U.S.S.G. § 2L1.2." *Torres-Miguel*, 701 F.3d at 169 (citing *Perez-Vargas*, 414 F.3d at 1287) (internal quotations omitted).

The *Torres-Miguel* court made clear that it does not matter whether the probability of
committing carjacking without violent force and without an intentional *mens rea* is remote.
There, the Government argued that there was no "realistic probability" that the defendant could
have violated the statute at issue without threatening violent physical force. *Id.* at 170-71. The
Fourth Circuit, however, held that the "realistic probability" test did not apply to the force clause,
so the defendant need not show a "realistic probability" that the statute could be violated without
a threat of violent physical force. *Id.* Because a possibility – no matter how slim – existed that
one could be prosecuted under the statute without a threat of violent physical force, the Fourth
Circuit found that the prior offense failed to categorically qualify as a "crime of violence." *Id.*

Indeed, the *Torres-Miguel* court did not cite to a single case in which an offense under
the California threat statute was actually violated without the use of violent physical force; yet, it

19

still found that because the elements of the offense left open the possibility that one could violate the statute through the use of non-violent force, a violation of that statute cannot categorically qualify as a "crime of violence." *Id.* at 171.

*Torres-Miguel* and the precedent it cites compel the conclusion that carjacking, which can be accomplished by causing fear of bodily harm, does not require "violent force" and thus cannot categorically be a § 924(c) "crime of violence." It does not matter whether the possibility of committing the offense without violent physical force is slim. Because the possibility exists, this Court cannot find that carjacking is categorically a "crime of violence" under § 924(c).

> b.       *Intimidation Does Not Require An Intentional Threat Of Violent Force As Contemplated By The § 924(c)(3)(A) Force Clause.*

Moreover, under the statute, carjacking can be accomplished by means of "intimidation," which does not require an *intentional* threat of physical force. In *Garcia v. Gonzales*, 455 F.3d 465 (4th Cir. 2006), the Fourth Circuit firmly held that an offense can only constitute a "crime of violence" under the force clause if an element of that offense requires an "*intentional* employment of physical force [or threat of physical force]." *Id.* at 468 (emphasis added).

Federal cases interpreting the "intimidation" element in the federal bank robbery statute (18 U.S.C. § 2113(a)) are instructive here. Federal bank robbery may be accomplished by, among other means, "intimidation," which means placing someone in fear of bodily harm – the same action required under carjacking. *See United States v. Higdon*, 832 F.3d 312, 315 (5th Cir. 1987) ("intimidation" under federal bank robbery statute means "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts"). *See also United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996) (same); *United States v. Pickar*, 616 F.2d 821, 825 (2010) (same); *United States v. Kelley*, 412 F.3d 1240, 1241 (2005) (same); *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003) (same).

20

It is plain that the "intimidation" element of bank robbery is missing this necessary intentional *mens rea* required under *Garcia*. "Intimidation" is satisfied under the bank robbery statute "whether or not the defendant actually intended the intimidation," as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." *Woodrup*, 86 F.3d at 36. *See also Yockel*, 320 F.3d at 821 (upholding bank robbery conviction even though there was no evidence that defendant intended to put teller in fear of injury: defendant did not make any movement toward teller, never presented teller with a note demanding money, never displayed a weapon, never claimed to have a weapon, and by all accounts did not appear to possess a weapon); *Kelley*, 412 F.3d at 1244 ("Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating"); *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993) (same).

In other words, a defendant may be found guilty of federal bank robbery even though he did not intend to put another in fear of injury. It is enough that the victim reasonably feared injury from the defendant's actions – whether or not the defendant actually intended to create that fear. Due to this lack of intent, federal bank robbery criminalizes conduct that does not require an *intentional* threat of physical force. Therefore, bank robbery squarely fails to qualify as a categorical "crime of violence" under *Garcia*.

Since the federal bank robbery "intimidation" element is defined in the same way as the carjacking "fear of injury" element, it follows that carjacking also fails to qualify as a categorical "crime of violence." The same definition of "intimidation" should apply to both. And in fact, Modern Federal Jury Instruction 53A-5 uses this very definition upon noting that "this instruction is adapted from the bank robbery statute, 18 U.S.C. § 2113, which uses the same

21

phrase in an analogous situation." Modern Federal Jury Instructions, Sand and Siffert (2014). The conduct defined here falls far short of the violent physical force contemplated by the statute, and applying this definition of intimidation means that carjacking cannot categorically qualify as a "crime of violence."

In sum, federal carjacking fails to qualify as a categorical "crime of violence" under the § 924(c)(3)(A) force clause for two independent reasons. First, the statute does not require a threat of *violent force*. Second, the statute does not require the *intentional* threat of violent force. Thus, Mr. Fields' conviction under Count Five cannot stand.

### C.   *Because Mr. Fields' Convictions For Using A Firearm In Relation To Escape Cannot Stand, His Conviction Under § 924(j) Must Fail.*

In addition to his convictions under § 924(c), Mr. Fields was convicted of § 924(j) for committing an act constituting murder under 18 U.S.C. §1111 in connection with the commission of a crime of violence under § 924(c). 18 U.S.C. § 924(j) states in relevant part that:

> (j) A person who, in the course of a violation of subsection [924](c), causes the death of a person through the use of a firearm, shall –
>
>> (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life . . .

Because any conviction under § 924(j) is wholly dependent upon the defendant first being convicted of violating § 924(c), without a valid § 924(c) conviction, there can be no conviction under § 924(j). Thus, Mr. Fields' conviction under § 924(j) must also fail.

### D.   *All Of The Sentences Imposed On Mr. Fields For His Convictions Under Counts Three, Five and Seven Must Be Deemed Void.*

The Government was authorized in this case only to seek death for Mr. Fields upon his conviction under §924(j) in connection with Count Three of the indictment, which was based on the predicate crime of escape. The crime of escape is not a crime of violence as defined by §

22

924(c). Because this conviction must now be deemed void, Mr. Fields' sentence of death must likewise be deemed void.

Similarly, Mr. Fields was sentenced to terms of imprisonment under Counts Five and Seven in connection with the predicate crimes of carjacking and escape, respectively. Because these convictions must also now be deemed void, Mr. Fields' sentences under these counts of the indictment must likewise be deemed void.

**II.     Mr. Fields Is Entitled To Relief Under 28 U.S.C. § 2255 Because (1) His Claim Is Cognizable Under *Johnson*, (2) It Satisfies The Successive Petition Requirements Of § 2255(h)(2), And (3) It Is Timely.**

**A.     *Mr. Fields' Claim Is Cognizable Under § 2255(a).***

Under 28 U.S.C. § 2255(a), a petitioner is entitled to relief when his original conviction "was imposed in violation of the Constitution or laws of the United States," or is in excess of this Court's jurisdiction. 28 U.S.C. § 2255(a). Mr. Fields is entitled to relief on all these grounds.

First, based on all the reasons noted above, Mr. Fields' convictions pursuant to § 924(c) violate due process because they are dependent upon an unconstitutionally vague residual clause.

Second, because escape and carjacking fail to categorically satisfy the "crime of violence" element under § 924(c) following the Supreme Court's decision in *Johnson*, Mr. Fields was convicted under a now-unconstitutional statutory scheme. This means his convictions for these crimes violate the laws of the United States and result in a miscarriage of justice. The Supreme Court has held that this is exactly the type of error that is cognizable under 28 U.S.C. § 2255(a). *See Davis v. United States*, 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal, . . . such a circumstance 'inherently results in a complete miscarriage of justice and presents exceptional circumstances' that justify relief under § 2255") (citations omitted).

23

Third, Mr. Fields' convictions for these crimes have been entered in excess of this Court's jurisdiction because not only did the indictment fail to state cognizable § 924(c) offenses, but it affirmatively alleged conduct that is outside of the sweep of § 924(c). Specifically, Counts Three, Five, and Seven of the indictment were premised on underlying "crime[s] of violence" – escape and carjacking. But as discussed above, under the categorical approach, escape and carjacking cannot categorically qualify as a § 924(c) "crime[s] of violence." Thus, Mr. Fields' convictions on for these three counts are a legal nullity that was entered in excess of this Court's jurisdiction and must be vacated. *See United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that . . . falls outside the sweep of the charging statute"); *United States v. Barboa*, 777 F.3d 1420, 1423 n. 3 (10th Cir. 1985) ("If Barboa pled guilty to something which was not a crime, he is not now precluded from raising this jurisdictional defect, which goes 'to the very power of the States to bring the defendant into court to answer the charge brought against him'") (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)).

**B.** ***Mr. Fields' Successive Petition Satisfies The Requirements Of 28 U.S.C. § 2255(h)(2) Because Johnson Announced A New, Previously Unavailable Rule Of Constitutional Law Made Retroactive By The Supreme Court To Cases On Collateral Review.***

Mr. Fields files this successive motion pursuant to 28 U.S.C. § 2255(h)(2) concurrently with an Application for Leave to File a Successor Motion Under 28 U.S.C. § 2255 in the Fifth Circuit. 28 U.S.C. § 2255(h)(2) requires that, before this Court can consider a successive motion, the appropriate court of appeals must certify as provided in 28 U.S.C. § 2244(b)(3)(C) that a successive motion contains a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable."

The gatekeeping provision of the Antiterrorism and Effective Death Penalty Act, as set forth in § 2255(h)(2), allows applications to file a successive § 2255 motion based on "a new

24

rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Under this provision, a federal prisoner must make a *prima facie* showing that the petition to be filed is based on a (1) previously unavailable (2) new rule (3) of constitutional law that (4) has been made retroactive by the Supreme Court to cases on collateral review. *Tyler v. Cain*, 533 U.S. 656, 662 (2001).

In *Johnson*, the Supreme Court announced a new rule of constitutional law. A case announces a new rule if its result was not "dictated by precedent existing at the time the defendant's conviction became final." *Chaidez v. United States,* 133 S. Ct. 1103, 1107 (2013) (quoting *Teague v. Lane,* 489 U.S. 288, 301 (1989)). In *Johnson,* the Supreme Court expressly overruled its prior decisions in *James* and *Sykes*, which had upheld the constitutionality of the ACCA's residual clause. 135 S. Ct. at 2563 ("Our contrary holdings in *James* and *Sykes* are overruled"). As the Supreme Court has made clear, the "explicit overruling of an earlier holding no doubt creates a new rule." *Whorton v. Bockting,* 549 U.S. 406, 416 (2007) (citation omitted).

*Welch v. United States* has put to rest any possible dispute on this front. In *Welch,* announced on April 18, 2016, the Court proclaimed: "It is undisputed that *Johnson* announced a new rule." 136 S. Ct. at 1264. *Welch* also put to rest any dispute that *Johnson*'s rule is one of "constitutional law," holding that this rule was previously unavailable to petitioners such as Mr. Fields. *See id.* Finally, the Court explained that *Johnson*'s rule is substantive, because that rule means the residual clause "can no longer mandate or authorize any sentence. *Johnson* establishes, in other words, that 'even the use of impeccable factfinding procedures could not legitimate' a sentence based on that clause." *Id.* at 1265 (quoting *United States* v. *United States Coin & Currency*, 401 U.S. 715, 724 (1971)). As such, the Court held, "*Johnson* is thus a substantive decision and has retroactive effect under *Teague* in cases on collateral review." *Id.*

25

Accordingly, Mr. Fields can do more than make out a *prima facie* showing. Because the Supreme Court has now confirmed that *Johnson* has announced a previously unavailable new rule of constitutional law, and affirmed that this new rule is retroactively applicable, Mr. Fields can conclusively demonstrate that he fully satisfies the requirements of § 2255(h)(2).

**C.    *Mr. Fields' Motion Is Timely Under 28 U.S.C. § 2255(f)(3).***

This motion is timely under 28 U.S.C. § 2255(f)(3), which provides for a one-year limitations period to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

The Supreme Court decided *Johnson* on June 26, 2015. As required under 28 U.S.C. §§ 2244(b)(3)(C) and 2255(h), Mr. Fields is also filing, on this date, an application asking this Fifth Circuit to authorize him to file a successive § 2255 motion asserting a claim based on *Johnson* and *Welch.* Pursuant to 28 U.S.C. 2244(b)(3)(D), "[t]he Court of Appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion" seeking authorization. The one-year limitations period to file a claim based upon *Johnson* will expire on June 26, 2016. Mr. Fields has filed the application with the Fifth Circuit on May 17, 2016, ensuring that the Court of Appeals has more than 30 days before the one-year limitations period ends to grant his request.[13]

---

[13] Mr. Fields recognizes that hundreds of federal prisoners likely will file claims based upon *Johnson* before the expiration of the one-year limitations period, including many prisoners who must seek authorization to file successive § 2255 motions. This will impose a heavy burden on the Fifth Circuit to adjudicate applications for authorization within the 30-day period specified in 28 U.S.C. § 2244(b)(3)(2). So, in an abundance of caution, Mr. Fields is also filing a motion with this Court to hold this case in abeyance pending the Fifth Circuit's decision on authorization, contemporaneously with the instant filing, and with an application for authorization to file a successive motion in the Fifth Circuit.

## CONCLUSION

For the reasons set forth above, Mr. Fields respectfully asks this Court to (1) vacate his convictions under § 924(c) for Counts Three (using and carrying a firearm causing death during and in relation to escape), Five (using and carrying a firearm during and in relation to carjacking), and Seven (using and carrying a firearm during and in relation to escape); (2) vacate the death sentence under § 924(j), imposed solely in connection with his conviction under Count Three; (3) vacate the sentences imposed on him in connection with his convictions under Counts Five and Seven; (4) grant Mr. Fields leave to amend this Motion or to submit a Memorandum of Law in support of the foregoing sentencing amendments and/or to schedule a status conference regarding sentencing; and (5) grant any further relief necessary to effectuate justice.  A proposed Order is attached.

Respectfully Submitted,


/s/ Jeffrey Ellis
JEFFREY ELLIS
OREGON CAPITAL RESOURCE CENTER
Oregon Bar Number 102990
Texas Bar Number 24034132
621 SW Morrison St., Suite 1025
Portland, OR 97205
(206) 218-7076
jeffreyerwinellis@gmail.com


PETER J. ISAJIW
KING & SPALDING LLP
New York Bar Number 4151239
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100
pisajiw@kslaw.com

Counsel for Sherman Lamont Fields

27

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 17th day of May, 2016, a copy of the foregoing Motion To Vacate Conviction Under 28 U.S.C. § 2255 was served via the CM/ECF electronic filing system upon:

Gregory S. Gloff, United States Attorney
Western District of Texas
800 Franklin, Suite 280
Waco, TX  76701
Greg.Gloff@usdoj.gov

Joseph H. Gay, Jr., United States Attorney
Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, TX  78216
Joseph.Gay@usdoj.gov

Jennifer Sheffield Freel, United States Attorney
Western District of Texas
816 Congress Avenue, Suite 1000
Austin, TX  78701
jennifer.freel@usdoj.gov


/s/ Jeffrey Ellis
Jeffrey Ellis


28